UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 19 CR 49 |
| v. | |
| MATTHEW ROSS | Chief Judge Rebecca R. Pallmeyer |

## GOVERNMENT'S POSITION PAPER AS TO SENTENCING FACTORS

The government submits this position paper as to the factors applicable for the sentencing of defendant MATTHEW ROSS. In light of defendant's serious conduct and his specific history and characteristics, the principles of sentencing set forth in 18 U.S.C. § 3553(a) call for a sentence within the advisory guidelines range, which the government submits is appropriate, just, and warranted. Should the Court determine that a term of probation is the appropriate sentence, the government requests that the Court, consistent with the Probation Office's recommendation, impose a sentence of two years' probation.

## I.     Ross's Criminal Conduct[1]

On August 4, 2021, defendant pled guilty to a one-count superseding information charging him with intentionally attempting to obstruct, by threat of force against religious real property, any person in the enjoyment of that person's free

---

[1] The information contained in this section is based on the Presentence Investigation Report ("PSR"), which contains the Government's Version of the Offense ("GVO"), the plea agreement, R. 102, and the discovery that was produced to defendant in this case. At sentencing, the district court may rely upon information contained in a PSR so long as the information is well-supported and appears reliable. *See United States v. Salinas*, 365 F.3d 582, 587 (7th Cir. 2004).

exercise of religious beliefs, in violation of Title 18, United States Code, Section 247(a)(2). R. 102.

Beginning on or around September 5, 2018, and continuing through on or about October 5, 2018, the trial in *People v. Jason Van Dyke* took place in the Circuit Court of Cook County. Defendant admitted in his plea agreement that on or about September 20, 2018, he made the following communication to his Facebook account:

> AFTER THEY LET [Police Officer A] GO, BURN ALL THE CHURCHES OF THE PASTORS THAT WERE AT [Individual C's] PRESS CONFERENCE!! FREE YOUR SOUL!!

Defendant acknowledged in his plea agreement that he knew that this communication would be understood as a threat and that when he posted this communication, he knowingly attempted to obstruct the exercise of religious beliefs of pastors and churchgoers who attended that press conference.

Defendant further admitted in his plea agreement that on October 2, 2018, he knowingly made the following posts on his publicly available Facebook account, which he acknowledged contained threats to injure Chicago police officers and their families:

(a) "ON MY LIFE, IF THEY LET [Police Officer A] OFF AFTER THIS WEAK ASS TESTIMONY, I'M BEATIN ALL COP KIDS ASS, ON SIGHT!! FREE YOUR SOUL!!!"

(b) "MT. GREENWOOD, MIDWAY, ALL COP NEIGHBORHOODS, WE BEATIN YA'LL KIDS & WIVES ASS IF [Police Officer A] GETS OFF!! FREE YOUR SOUL!!!"

(c) "JUST SHOOT UP THE WHOLE COURTROOM!! FREE YOUR SOUL!!!"

2

(d)    "EVERY ALDERMAN'S OFFICE SHOULD BE BURNED TO THE GROUND!! FREE YOUR SOUL!!!"

## II.    Sentencing Guidelines Calculations

As a matter of process, the Court must properly calculate the Guidelines range, treat the Guidelines as advisory, consider the section 3553(a) factors, and adequately explain the chosen sentence. *Gall v. United States*, 552 U.S. 38, 49-50 (2007).

The parties and the Probation Office agree on the offense level calculation, defendant's criminal history category, and the advisory guidelines range as set forth in the PSR. PSR ¶¶ 19-28, 33, 77. Pursuant to Guideline § 2H1.1(a)(3), the base offense level is 10 because the offense involved the threat of property damage. PSR ¶ 19. Defendant has 0 criminal history points and falls into Criminal History Category I. PSR ¶ 33. When considering timely acceptance of responsibility, PSR ¶ 26, defendant's total adjusted offense level is 8. PSR ¶ 27.

When that offense level is considered with his placement in Criminal History Category I, defendant's advisory Guidelines range is 0 to 6 months' imprisonment. PSR ¶ 77.

## III.   Application of the Section 3553(a) Sentencing Factors Warrants A Guidelines Range Sentence.

A guidelines range sentence is reasonable and appropriate in this case because

the § 3553(a) factors weigh in favor of such a sentence. [2] In determining the appropriate sentence to impose, the sentencing court considers, among other factors, the nature and circumstances of the offense and the history and characteristics of the defendant. 18 U.S.C. §3553(a)(1). [3] Section 3553(a) requires the court to impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of sentencing.

There are several § 3553(a) factors that support a guidelines range sentence for this defendant, including: (1) his history and personal characteristics, (2) the seriousness of the offense, (3) the need to provide just punishment for the offense and adequate deterrence, (4) the need to protect the public from further crimes of the defendant; and (5) the need to avoid sentencing disparities among defendants in similar circumstances.

The government's requested guidelines range sentence adequately addresses these factors and appropriately provides a just sentence for this defendant.

---

[2] Pursuant to Guideline § 5C1.1(b), where, as here, the applicable guidelines range is in Zone A of the sentencing table, a sentence of imprisonment is not required, unless the applicable guideline in Chapter 2 expressly requires such a term. USSG § 5C1.1(b). Under Guideline § 5B1.2(a)(1), if probation is imposed, the term shall be at least one year but not more than five years since the offense level is six or greater. PSR ¶ 83. As noted in the commentary to Guideline § 5B1.2(a)(1), "[w]ithin the guidelines set forth in this section, the determination of the length of a term of probation is within the discretion of the sentencing judge."

[3] Courts also must consider the need for the sentence to (A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2)(A)-(D); *see also e.g., United States v. Vallar*, 635 F.3d 271, 278 (7th Cir. 2011).

Defendant's proposed sentence of three months' probation does not accomplish any of these purposes. Rather, it seriously deprecates the serious nature of the offense.

### A.    The Seriousness of the Offense

There can be no question that the nature of defendant's conduct was serious. Defendant posted the communications on his publicly viewable Facebook account at a time when the trial of then-Chicago police officer Jason Van Dyke was approaching, ongoing, and nearing its conclusion. Words are powerful. Fear can be instilled through words alone, particularly when considered in the context of when the words are uttered. This was a tumultuous, volatile, and emotional time in the City of Chicago. As the Van Dyke trial was ongoing and particularly as it neared its conclusion, tensions in the City were indisputably high. In this climate, defendant knowingly made a series of incendiary posts directed to the families of Chicago police officers, religious leaders, and court personnel that served only to heighten the tension, inflame passions, and engender fear.

Defendant's characterization of his communications as "unenlightened," R. 105 at 1, severely minimizes the nature of those communications. It demonstrates a failure to recognize the impact that his comments had on the individuals who viewed them and the potential influence his words had on those who could have viewed them as serious expressions of an intent and invitation to commit violence.

Defendant contends that there were no victims in this case. R. 105 at 5. That is simply not true. Defendant's posts were publicly available on his Facebook account for anyone on Facebook to view, and they were seen. In particular, those who viewed

defendant's October 2, 2018 posts were frightened. During the investigation, a number of concerned individuals who viewed defendant's posts reported them to law enforcement because they were concerned for their safety. They viewed defendant's words and took them seriously, believing them to call for violence. *See Elonis v. United States*, 135 S. Ct. 2001, 2005-06 (noting Elonis's Facebook posts frightened his targets enough to prompt them to contact the authorities). After law enforcement viewed the posts, they found the communications concerning enough to immediately begin investigating the source of them. While no known violence resulted from defendant's communications, defendant's October 2, 2018 posts contained words of violence ("shoot up the whole courtroom"; "beatin' all cop kids ass"; and "burn[ing] [alderman offices] to the ground"), which impacted those who saw them. While no one was physically hurt as a direct result of defendant's actions, that fortunate result does not mean that the individuals who saw the posts did not feel fear. It cannot reasonably be said that those who viewed defendant's comments and were fearful after reading them were not harmed by defendant's actions.

## B.     History and Characteristics of the Defendant

Against the backdrop of the seriousness of the offense, defendant's background, as outlined in the PSR, consists of factors that mitigate that offense. Defendant, 35 years old, is married with five children. PSR ¶ 49. By his own account, defendant had a positive upbringing where he grew up in a safe neighborhood with a supportive family who was actively involved in his life. PSR ¶¶ 45-48. Defendant graduated college with a bachelor's degree in history and physical education with a completion

in a Chicago-based clinical massage therapy program.[4] PSR ¶¶ 63-64. Moreover, defendant has no self-reported history of substance or mental abuse and has enjoyed relatively good physical health. PSR ¶¶ 54, 60. Reference letters that defendant submitted from friends and members of the community spoke highly of his character. Prior to the present offense, defendant's criminal history reflects a lack of serious criminal conduct. PSR ¶¶ 34, 37-43. And while the present case has been pending, defendant has been compliant with the conditions of his pretrial release. PSR ¶ 4. These are all positive mitigating factors in defendant's background that the Court should consider as part of its sentencing analysis.

### C.   The Need for Defendant's Sentence to Promote Respect for the Law, Provide Just Punishment, Afford Adequate Deterrence, and Protect the Public from Future Crimes by this Defendant

A guidelines sentence will help promote respect for the law, provide a just punishment for defendant's current crime, serve to protect the public from future crimes by the defendant, and ensure that defendant does not repeat his criminal conduct.

Defendant has expressed remorse for his conduct. When a Chicago Police Department detective and an Assistant State's Attorney interviewed defendant after he made the October 2, 2018 posts to his Facebook page, he admitted that he made them. Defendant further acknowledged that he understood how people viewing his posts could feel threatened by them, that he was remorseful, and that he did not

---

[4] Defendant reported various positions of employment to Probation, though none have been verified. PSR ¶¶ 67-69.

intend to hurt anyone and he did not want to hurt anyone else. That remorse and positive conduct while on pretrial release suggests that specific deterrence for this defendant can be achieved with a guidelines range sentence. As for general deterrence, a guidelines range sentence will adequately deter others from making communications intended to instill fear.

### D.     Need to avoid Sentencing Disparities Among Defendants

An objective of the Guidelines is to ensure that similarly situated defendants do not receive disparate sentences. 18 U.S.C. § 3553(a)(6). The Sentencing Reform Act "aims to create a comprehensive sentencing scheme in which those who commit crimes of similar severity under similar conditions receive similar sentences." *Hughes v. United States*, 138 S. Ct. 1765, 1776 (2018). An advisory Guidelines sentence would help to avoid unwarranted sentencing disparities in sentencing.

## IV.   Conditions of Probation

The government requests that the Court impose a sentence within the guidelines range. If, after application of the section 3553(a) sentencing factors, the Court determines that the appropriate sentence is a term of probation, the government recommends, consistent with the Probation Office's recommendation, that the Court impose a two-year term of probation with the mandatory, discretionary, and special conditions of probation recommended in the PSR. PSR at 14-19.

The section 3553(a) factors addressed above and those identified by the Probation Office justify the imposition of the probation conditions recommended in

the PSR. They are reasonable and appropriate given defendant's criminal conduct to protect the public; they will deter defendant from returning to criminal conduct and promote his respect for the law; they will help to ensure that defendant receives appropriate support for him to reintegrate into society while on probation; and they will assist the probation officer in monitoring defendant's conduct, condition, and compliance during his probation term.

Defendant only notes an objection to two recommended conditions: Discretionary Condition No. 24 and Special Condition No. 3. R. 105 at 2-3.

Discretionary Condition No. 24 requires defendant to comply with the requirements of the Computer and Internet Monitoring Program as administered by the Probation Office, which include the installation of computer monitoring software on computers to which defendant has access. PSR at 17. Defendant argues that this condition is unduly intrusive on him and his family and is not warranted based upon his history and background. R. 105 at 3.

The probation officer concluded that the computer monitoring condition is appropriate. Prob. Sent. Rec. at 2. The government believes that the monitoring condition is rationally and reasonably related to defendant's specific offense conduct and characteristics, to the sentencing purposes identified by §§ 3563(a) and (b) and § 3563(b)(22), and to defendant's specific history and characteristics. Defendant's criminal conduct involved the use of social media to commit the instant offense. The monitoring condition will serve to deter defendant from engaging in any further criminal behavior, to promote public safety through effective oversight of his

9

behavior, and to achieve the desired outcomes of supervision. Such monitoring, when judiciously employed, could assist in the early detection of violation conduct, help defendant engage in meaningful change, and potentially prevent recidivism.

Given the central nature of a computer and technology to the circumstances of defendant's criminal conduct, it cannot be said that the imposition of this condition is unnecessary or unreasonable in order to deter defendant from committing future criminal conduct and to protect the public from further crimes. *See United States v. Deatherage*, 682 F.3d 755, 764 (8th Cir. 2012) (upholding computer monitoring condition where computer use was central to the offense) (citing cases); *United States v. Sorenson*, 845 Fed. Appx. 468, 472 (8th Cir. 2021) (upholding computer restriction condition where it met the requirement of § 3583(d) and was reasonably related to defendant's criminal history and characteristics").

Special Condition No. 3 requires that, if unemployed after the first 60 days of supervision, or if unemployed after 60 days after termination of a lay-off from unemployment, defendant shall perform at least 20 hours of community service per week at the direction of the U.S. Probation Office until gainfully employed. PSR at 17. The amount of community service shall not exceed 400 hours. *Id.* The government notes as part of the plea agreement, defendant agreed to complete 50 hours of community service, at the direction of the Probation Office. R. 102 at 12.

Consistent with the § 3553(a) factors outlined above, the government requests that in addition to Discretionary Condition No. 8, which requires that while defendant is under the supervision of the Probation Office, he not possess a firearm,

destructive device, or other dangerous weapon, defendant not request to have his FOID card reinstated or obtain a new one during the period of supervision.

## V.     Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose a sentence within the Guidelines range, and should the Court determine that a term of probation is appropriate, order a two-year term of probation with the requested probation conditions consistent with the goals of criminal punishment.

Date: December 6, 2021                    Respectfully Submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By:     */s/ Sheri L. Wong*
Sheri L. Wong
John D. Cooke
Assistant U.S. Attorneys
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-5300

11